### CROPSEY v. JOHNSTON.

1. WILLS — POWERS OF TRUSTEE — COLLUSION — INVESTMENT OF TRUST FUNDS.

A will bequeathing to testator's son $5,000 in cash arising from the former's property, "such as windmill stock or any other source," to be controlled by a trustee for said son, a specified amount, whether arising from dividends on said stock or from money at interest, to be paid to him annually, did not give the trustee, who received the fund in cash, a right to purchase windmill stock from another son, by connivance and collusion with him, at a price in excess of its value.

2. TRUSTS—MISAPPROPRIATION OF FUNDS—PAYMENT OF FUND INTO COURT.

Where a legatee, entitled to the income of a trust fund, filed a bill against the trustee, making the persons entitled to the principal after the death of the first-named legatee parties, who by their answer consented that the court should appoint some suitable person as trustee, and complainant died pending the suit, which was revived in the name of his executor, it was competent for the court, on finding the trustee guilty of misappropriating the fund, to decree that the fund should be paid into court, subject to a further hearing and adjudication.

Appeal from Kalamazoo; Adams, J. Submitted April 8, 1904. (Docket No. 23.) Decided June 25, 1904.

Bill by Jesse R. Cropsey, executor of the last will and testament of Melvin Williams, deceased, against Frank P. Johnston, trustee, Malcolm B. Williams, and others, for an accounting. From a decree for complainant, the above-named defendants appeal. Affirmed.

*Jesse R. Cropsey* and *Dallas Boudeman,* for complainant.

*A. M. & C. H. Stearns* ( *William G. Howard,* of counsel ), for appellants.

HOOKER, J. The bill in this cause was filed by Melvin Williams, who died pending the litigation, and the proceeding was revived in the name of Cropsey, his executor, and continued in his name.

Melvin Williams was one of several children of Bradley S. Williams, a wealthy resident of Kalamazoo. Melvin Williams, a son, was poor, and a veteran of the Civil War between the United States and the late Southern Confederacy. Bradley S. Williams was owner of a large amount of the capital stock of the Williams Manufacturing Company, a corporation engaged in the manufacture of windmills at Kalamazoo, at the time of his death. He died in 1893, leaving a will, which was duly probated.

It contained the following provisions, viz. :

"*Seventh.* I give, devise, and bequeath to my son Melvin Williams five thousand dollars in cash arising from my property, such as windmill stock or any other source, to be held and controlled by Frank P. Johnston, trustee, for the benefit of said Melvin Williams. I also give and bequeath to my son Melvin Williams all notes and obligations that I hold against him, and the interest accruing from the same, amounting at this date to about $6,300.

" I hereby appoint Frank P. Johnston, of Kalamazoo, Michigan, my trustee for the purpose of handling and taking care of the five thousand dollars which I have hereby devised and bequeathed to my son Melvin Williams. The dividends arising from my windmill stock, or money at interest, he shall pay over and deliver annually to my son Melvin Williams, from year to year, so long as he shall

137 MICH.—2.

live, three hundred and fifty dollars, arising from said interest or dividend money, less the cost for doing the business; and at his death the said five thousand dollars I direct shall be by him, the said Frank P. Johnston, trustee, conveyed, assigned, and turned over to Mary Williams, former wife of my son Melvin Williams, and to her children by the said Melvin Williams, namely, Lottie Williams, Burt Williams, Homer Williams, and Maud Williams, so to be held and owned by them share and share alike."

Frank P. Johnston received the sum of $5,000 under the provision, and the bill is filed to compel him to account, and respond for a misappropriation of the fund.

Malcolm B. Williams was a son, and Homer Manvel the executor, of Bradley S. Williams. On May 15, 1894, Homer Manvel, as executor, gave to Johnston, as trustee, a check for $5,000 in payment of the amount provided by the will. Johnston immediately indorsed this check and gave it to Malcolm B. Williams in payment for stock in the windmill company, which the parties now claim that Johnston bought as an investment with the fund, receiving back a small balance of $250. From that time to the death of Melvin Williams, he paid but a fraction of the installments provided by the will to him; claiming that the money was invested in windmill stock, and was not paying dividends. Melvin during this time was in poverty, supported at the Soldiers' Home in California, and appealed to Johnston often for money. The evidence shows that, at the time of this transaction, the windmill business was not doing well, and the conclusion is irresistible that Malcolm took advantage of his brother, with the connivance of Johnston; getting $5,000 in cash, or thereabouts, in exchange for his depreciated stock.

The court found that the purchase of this stock was without authority of law, and void as to Melvin Williams and his family, and it was adjudged that Malcolm B. Williams account for and pay to the complainant, the executor, as the income of the sum of $4,750 (the exact amount paid for the stock), interest thereon at the rate of

6 per cent. per annum from July 15, 1894, to December 5, 1902 (that being the date of the death of Melvin Williams), with interest upon yearly installments after due, less a credit for such sums as had been paid to said Melvin Williams, with interest thereon as aforesaid; the balance found to be due to said complainant being $2,736.98. It was further ordered that the principal sum of $4,750 be paid by Malcolm B. Williams to the register, with interest from December 5, 1902. It was also ordered that defendant Johnston pay similar interest upon the sum of $250 (the remainder of said fund), less fees in said decree determined at $134.58, and to pay to the register said sum of $250, with interest. The disposition of the moneys ordered to be paid to the register was made a subject for further hearing and adjudication. It was further ordered that, upon compliance with the decree by Williams, Johnston should reassign the stock to him. Johnston and Williams have appealed.

Counsel make an elaborate argument in support of the right of Johnston, the trustee, to make the purchase of stock for Melvin, but admit in their brief that, if there was collusion between the appellants to defraud Melvin, there would be a liability, unless barred by laches or the statute of limitations. We are unable to construe this will in accord with defendants' contention. It provided for a legacy in cash, and contemplated the sale of windmill stock, of which the testator had considerable, or other property, if necessary. He endeavored to assure the payment of a $350 annual income to Melvin, whether it should arise from interest or dividend money. From this it is urged that he must have contemplated that the trustee would purchase windmill stock with the fund, and he did this; paying more than the stock was appraised at, instead of letting Melvin have stock from the estate at the inventory price. If it be conceded that the trustee might have used the fund by investing in stocks of any kind, we are of the opinion that the evidence indicates undue thrift on the part of Malcolm, and that, by permitting him to unload a

large block of stock upon his brother at an exorbitant price, Johnston was a participant in the wrong. Both had an intimate knowledge of the affairs of the company, and were in a position to anticipate the inevitable consequence of depreciation. We think advantage was taken of this brother, and that the decree is a just one, and that, under the circumstances of this case and the state of the record, there is no occasion to discuss the questions of laches and statute of limitations.

It is claimed that the original complainant was not interested in the disposition of the principal of the fund, and that the court should not have made a decree regarding it. Assuming that the appeal properly raises this question, we think the bill and the answers of the parties who claim to be entitled to this fund justify the court in taking this fund into its custody for such disposition as law and justice may require, and for such persons as may show their right to it, under the prayers of the consent of these parties, who are, apparently without dispute, to be the residuary legatees.

The decree is affirmed, with costs.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.